Argued and submitted November 28, 1983, reversed and remanded February 22, 1984

In the Matter of the Compensation of
Ronald W. Mogliotti, Claimant.

MOGLIOTTI,
*Petitioner,*

*v.*

REYNOLDS METALS COMPANY,
*Respondent.*

(81-10-963; CA A28065)

676 P2d 919

Dennis H. Henninger, Lake Oswego, argued the cause and filed the brief for petitioner.

Keith D. Skelton, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., dissenting.

## NEWMAN, J.

Claimant appeals from an order of the Workers' Compensation Board that affirmed the referee's denial of medical benefits under ORS 656.245(3).[1] The issue is whether employer must pay for claimant's surgery performed in California by a California physician on December 2, 1981. The Board ruled that because employer's insurer did not approve of claimant's choice of the out-of-state doctor, employer need not pay for the surgery that the doctor performed. We reverse and remand.

Claimant suffered a compensable back injury in Oregon in 1979. Following a laminectomy in 1980, he received an award of 25 percent unscheduled permanent partial disability.[2] He moved to California, where he suffered increased pain and sought medical treatment from Dr. Becker. In mid-September, he was hospitalized for a myelogram that Becker performed. The insurer subsequently paid for those medical services. On September 28, 1981, the doctor sent a letter to claimant's attorney and a copy to the insurer:

> "At this time he appears to have a recurrence of pain and some apparent muscle spasm in his back and the myelogram, while reported as a negative myelogram by the radiologist does indicate a somewhat more bulging of the posterior longitudinal ligament then [sic] is usually seen. These may or may not represent further disc degeneration at these levels and may be accounting for his presnet [sic] discomfort and disability. If this is indeed so, it would have to be judged in terms of aggravation of pre-existing condition and considered as a deterioration of his condition from the time of his examination in June 1980 by Dr. Tobin. Going further back it would have to be considered related to his work injury. Whether or not this patient will require additional surgery will

---

[1] ORS 656.245(3) provides:

"The worker may choose an attending doctor or physician within the State of Oregon. The worker may choose the initial attending physician and may subsequently change attending physician four times without approval from the director. If the worker thereafter selects another attending physician the insurer or self-insured employer may require the director's approval of the selection and, if requested, the director shall determine with the advice of one or more physicians, whether the selection by the worker shall be approved."

[2] Following a hearing on October 5, 1981, claimant was awarded 112 degrees for 35 percent unscheduled low back disability, an increase of 32 degrees.

have to depend upon whether or not his condition clears up or remains as now or deteriorates."

In early October, 1981, claimant made a telephone call to the insurer about his medical treatment in California. He testified that the insurer told him that, although he could choose his own doctor in Oregon, he could not choose an out-of-state doctor. He also testified:

"[Claimant's attorney]: Were you in Portland?

"[Claimant]: Yes. I talked to [the insurer's representative] and asked him, you know, what the best way was to go; and he told me that I should stay up here and see a doctor up here.

"* * * * *

"Did you have any source of income at the time?

"No.

"Did you explain that to him?

"Yes.

"What did he tell you?

"He just said that there was nothing they could do about it.

"Did he mention anything to you about a doctor in the Merced or Atwater area?

"Yes.

"What was the nature of that conversation?

"I called him and I told him that I couldn't stay up here, and that I was going home, and he said that he would get a doctor for me down there.

"Did he tell you who?

"No.

"Have you ever heard mention of a Dr. Richard Thorp; did he ever mention that name to you?

"No."

The insurer did not give claimant the name of a California physician until February, 1982.

Claimant also testified that he made other telephone calls to the insurer about medical treatment. He testified that, during his last telephone call just before the surgery, he told the insurer of his plans for surgery and that the representative

said, "Fine, we will open your file." Claimant also testified concerning his conversations with the insurer:

"Q. [Claimant's attorney]: How many additional times did you call him and talk to him or call and attempt to talk to him regarding a second opinion after that first conversation?

"A. [Claimant]: Three times — well, it would be four times altogether counting the surgery time, when I told him I was having the surgery.

"Q. Did he at any of those times give you the name of any alternative doctor?

"A. No.

"Q. Did he at anytime indicate to you that Dr. Becker was not authorized to do the surgery?

"A. No."

On December 2, 1981, Becker performed the laminectomy. On December 16, 1981, the insurer denied payment for the surgery on the grounds that (1) there was no relationship between the laminectomy and the 1979 injury and (2) "You do not have your choice of attending physician outside the state of Oregon. Liberty Mutual did not give consent for your recent treatment and surgery." On December 18, Becker wrote to the insurer the details of his treatment, including the December 2 surgery.

The Board affirmed the referee's finding that, contrary to the insurer's position, the laminectomy was related to the 1979 injury. Employer does not appeal that determination. The Board, however, affirmed the referee, ruling that claimant "did not comply with the requirements of ORS 656.245 and *Rivers v. SAIF,* 45 Or App 1105, 610 P2d 288 (1980)." In *Rivers* we stated:

"By specifically giving the worker a choice of doctors within the state of Oregon, the legislature withheld that choice outside the state. * * * Reading ORS 656.245 in its entirety, it is clear that subsection (2) limits a workers' choice of doctors when they seek treatment in another state, *but in no way diminishes their right to receive medical care, under subsection (1) of the same statute, wherever they are.*" 45 Or App at 1108. (Emphasis supplied.)[3]

Claimant asserts that the insurer's failure to respond to his requests for seventy-one days—from his first phone call on October 5 until the denial letter of December 16—was an unreasonable denial of his right to receive medical care. *See*

---

[3] ORS 656.245(2) (*amended by* Or Laws 1981, ch 535, § 31) became ORS 656.245(3). *See* footnote 1, *supra.*

*Evans v. SAIF,* 62 Or App 182, 187, 660 P2d 185 (1983). We find that employer, on the facts here, may not refuse to pay for claimant's surgery. Although initially the insurer told claimant that he could not choose his out-of-state doctor, it did not specifically object to claimant's choice of Becker nor in a timely manner select an alternate physician. The insurer paid Becker's earlier medical bills, including the bill for the myelogram, and for claimant's mileage to see him. When claimant, just a few days before the surgery, told the insurer, "I'm going to have surgery," it responded, "Fine, we will open your file," although it knew that the claimant had chosen Becker to perform the surgery. The insurer's letter to claimant of December 16, after Becker had performed the surgery, did not state specifically that it did not consent to claimant's choice of Becker but only to "your recent treatment and surgery."

The laminectomy that Becker performed was for a condition that resulted from claimant's compensable injury. Although ORS 656.245(3) limits a worker's choice of doctor outside of Oregon, it does not limit his right to receive medical service under ORS 656.245(1), wherever he is. *Rivers v. SAIF, supra,* 45 Or App at 1108. The insurer's actions gave claimant a reasonable basis to believe before the December 2 surgery that it had approved of claimant's choice of Becker. If an insurer gives a claimant a reasonable basis to believe that it has approved his choice of doctor, the claimant need not obtain the insurer's consent to medical services that the doctor provides for conditions that result from the compensable injury. Here, employer cannot, after the surgery that Becker performed, refuse to pay for it. ORS 656.245(3).[4]

Reversed and remanded.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent. ORS 656.245; *Rivers v. SAIF,* 45 Or App 1105, 610 P2d 288 (1980).

---

[4] Our conclusion is consistent with OAR 436-54-245(5), effective January 1, 1982:

"When the worker chooses an attending physician outside the state of Oregon, the insurer or self-insured employer may object to the worker's choice and select the attending physician. Payment for treatment or services rendered to the worker after the insurer or self-insured employer has objected to the worker's choice of attending physician may be rejected by the insurer or self-insured employer."