On petitioner's reconsideration filed November 22, 1985, reconsideration granted, former opinion (76 Or App 212, 707 P2d 643) reversed; referee's order reinstated February 12, reconsideration denied May 9, petition for review denied July 1, 1986 (301 Or 320)

In the Matter of the Compensation of
Lorri K. Day, Claimant.

DAY,
*Petitioner,*

*v.*

S & S PIZZA COMPANY,
*Respondent.*

(82-07346; CA A32774)

714 P2d 275

Peter W. McSwain and Francesconi & Cash, P.C., Portland, for petition.

No appearance contra.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Claimant petitions for reconsideration of our decision that affirmed without opinion an order of the Workers' Compensation Board. *Day v. S & S Pizza Company,* 76 Or App 212, 707 P2d 643 (1985). The Board had reversed an order of the referee that awarded compensation and penalties and attorney fees for denial of medical treatment for her compensable back injury. In light of the intervening decision of the Supreme Court in *Reynaga v. Northwest Farm Bureau,* 300 Or 255, 709 P2d 1071 (1985), we grant reconsideration, reverse the Board and reinstate the referee's order.

Claimant injured her lower back in June, 1981, while employed as a waitress. She underwent a myelogram and, in January, 1982, Dr. Whitney, her orthopedist, recommended a laminectomy and discectomy. Three months later he reported:

> "[Claimant] still needs surgery. She is having a lot of pain in both legs * * *. The insurance people and lawyer are still playing games, and she does not want to go ahead until some of this is taken care of, but the results will be compromised the longer we wait."

The insurer denied compensability on the ground that the injury was not related to claimant's employment. In June, 1982, the referee set aside the denial. Employer appealed, and in March, 1983, the Board affirmed the referee. This review does not involve that decision.

Claimant, however, was reluctant to undergo a laminectomy. In June, 1982, she learned of a surgical procedure called a percutaneous nuclectomy, in which a needle is inserted into the lumbosacral area, and fragmented disc material is removed mechanically. In contrast to a laminectomy, there is no loss of blood or blood replacement and no incision; only a local anesthetic is used, the hospitalization period is much shorter and the total cost is about one-fourth of that for a laminectomy. Claimant contacted Dr. Morris, Chief of Orthopedic Surgery at the University of California Medical School in San Francisco. Morris and a physician in Florida were the only physicians in the country who performed this operation. Morris was fully qualified to perform it.

In a series of telephone conversations during August, 1982, claimant discussed Morris' treatment with the insurer's

claim representative, Henry. Claimant provided Henry with Morris' name, address, and telephone number. Henry promptly responded by letter:

"Per our telephone conversation of Tuesday, August 24, 1982, I am enclosing a photocopy of Oregon Workers' Compensation Statute 656.245, which states that we will not be responsible for expenses and payments generated by your choice of a treating physician outside the state of Oregon."

The insurer did not investigate the surgical procedure, recommend any other physician than Morris or object to Morris or to the University of California facility. Henry thought that claimant should be evaluated by Dr. Rosenbaum in Portland, but she did not arrange an appointment for claimant, and no examination was performed.

In a letter of September 29, 1982, to claimant's counsel, insurer's counsel stated:

"Under the Court of Appeals decision in *Rivers v. SAIF* [45 Or App 1105, 610 P2d 288 (1980)], *the carrier has control of the claimant's out-of-state treatment.* * * * You ask that we spend time and money in an effort to investigate a new method of medical treatment which we may or may not subsequently authorize for this claimant. At this time, it is *not* authorized.

"Under the circumstances, if you want us to spend time and money looking into this procedure further, I suggest you write to the Board dropping your request for a hearing on the issues of penalties and attorneys' fees. My client will feel much better about cooperating with you if they see something happening in return. The withdrawal would naturally have to be permanent on those issues up to the date of your letter to the Board.

"Once this is done, if your client will provide the doctor's name and/or the name of the facility involved, [the insurer] has informed me they will diligently investigate the possibility of the proposed surgical procedure." (Emphasis supplied.)

At that time, claimant had already provided the insurer with Morris' name and the facility involved.

On October 3, 1982, claimant was examined by Morris, who advised her that the results of the operation would be compromised if she delayed further. On October 12, an administrator of the medical school hospital in San Francisco telephoned the insurer's claim representative, advised her

that claimant was being operated on later that morning and requested authorization for the surgery. The insurer again denied authorization. Morris performed the percutaneous nuclectomy. Claimant was released from the hospital on October 13.[1]

On receipt of billings for the surgery, the insurer wrote the hospital and Morris that payment could not be made without chart notes and reports. In March, 1983, Morris provided a surgical report to claimant's counsel describing the operation. In July, 1983, Morris wrote to claimant's counsel:

> "It appears that the percutaneous nuclectomy was successful in alleviating her sciatica symptoms. This procedure is done under local anaesthesia using a standard posterolateral approach. The results are similar to those for chymopapain injection. Chymopapain removes nuclear material chemically while this procedure does so mechanically. The success rate in relieving sciatica in carefully selected patients is seventy percent. The surgery costs of $2,000.00 compared to $10,000.00 for a laminectomy. The length of hospital stay is two days compared to seven or eight days for a laminectomy. The procedure has been covered by at least some of the workman compensation carriers in California."

Morris also wrote: "She is doing quite well. She has been working full time * * * since March 1983. She experiences only occasional pain in the left lower extremity with prolonged walking." Claimant provided the insurer with a copy of Morris' report before the hearing before the referee. Whitney concurred in Morris' assessment of claimant's progress.

ORS 656.245(1) provides:

> "For every compensable injury, the insurer * * * shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires * * *."

Under ORS 656.245(3),[2] an injured worker may choose an

---

[1] Ordinarily hospitalization following a laminectomy is about seven days.

[2] ORS 656.245(3) provides:

"The worker may choose an attending doctor or physician within the State of Oregon. The worker may choose the initial attending physician and may subsequently change attendingn physician four times without approval from the director. If the worker thereafter selects another attending physician the insurer or self-insured employer may require the director's approval of the selection and, if requested, the director shall determine with the advice of one or more physicians, whether the selection by the worker shall be approved. Nothing in this section shall be construed to permit the director to determine specific treatment criteria."

attending doctor within Oregon, but if she chooses one outside Oregon, the insurer has a limited right to veto the worker's choice. The insurer may refuse to pay for the treatment after it has properly objected to the worker's choice of an out-of-state doctor.

■ *Reynaga v. Northwest Farm Bureau, supra,* emphasizes that the insurer's power to veto claimant's choice of an out-of-state physician under ORS 656.245(3) is not unlimited. That power does not limit claimant's right to receive medical services under ORS 645.245(1), wherever she is. "ORS 656.245(1) requires insurers to provide reasonable medical services without regard to the injured worker's geographic location." 300 Or at 261. *See also Mogliotti v. Reynolds Metal Co.,* 67 Or App 142, 676 P2d 919 (1984).

In *Reynaga* the insurer had refused to approve any treatment by out-of-state chiropractors. The court held that, notwithstanding ORS 645.245(3), that was improper. The court explained:

> "We interpret ORS 656.245 as not denying the worker a choice of treatments and hold that a compensation insurer may not deny an entire category of otherwise reasonable out-of-state medical services." 300 Or at 262.

The court defined the limited scope of the insurer's veto power. The court recognized that, because out-of-state doctors are beyond the reach of state process, insurers have an interest in assuring that claimants receive treatment only from out-of-state doctors who will cooperate with them.

> "Any state concern for availability of reports and testimony from out-of-state medical service providers would be satisfied by granting insurers a right to veto individual doctors who have demonstrated that they are unlikely to fully cooperate with reporting requirements." 300 Or at 259.

■ Here, the insurer did not object to Morris, and nothing in the record suggests that he was unlikely to cooperate with reporting requirements fully. Employer contends, however, that the insurer had "a right under ORS 656.245(3) to control claimant's choice of physicians and *treatment* outside of Oregon." (Emphasis employer's.) The insurer's letter of September 29, 1982, advised claimant that "the carrier has control of the claimant's out-of-state treatment,"

and Henry stated at the hearing that the insurer has "an absolute right to refuse out-of-state treatment" to an injured worker.[3] The insurer exercised its limited authority in order to deny claimant a particular type of surgical treatment. That is inconsistent with *Reynaga*. Under the circumstances, the insurer waived its limited right under ORS 656.245(3) to pre-authorize claimant's choice of Morris.

■        Insurer does not dispute that claimant's per-cutaneous nuclectomy was reasonable and necessary medical treatment for her compensable back injury. Accordingly, she is entitled to compensation under ORS 656.245(1). *Linn Care Center v. Cannon,* 74 Or App 707, 704 P2d 539 (1985).[4]

■        Because the insurer used its power over claimant's choice of an out-of-state doctor to deny claimant reasonable and necessary medical treatment, the subsequent denial of her claim for medical treatment was unreasonable. Accordingly, claimant is entitled to penalties and attorney fees.

Reconsideration granted; reversed; referee's order reinstated.

---

[3] At the hearing Henry testified:

"Q Did you on or about August 23, 1982 send a letter to Ms. Day stating that you're enclosing a photocopy of [ORS 656.245] and stating that that statute states that you would not be responsible for expenses and payments generated by her choice of a treating physician outside of the state?

"A Yes, I did.

"Q Does that continue to be your primary reason for rejecting Lorri Day's surgery, that she was out of the state of Oregon?

"A Yes, it is.

"Q And, in fact, you have to offer us here today no documented medical basis for doubting the percutaneous nuclectomy as a valid procedure?

"A Right.

"* * * * *

"Q And is that your position that with regard to any injured worker who elects to go out of state for treatment you're free to refuse that treatment as an absolute right?

"A That's correct."

[4] Our decision that the operation was reasonable and necessary is based both on the medical evidence of claimant's condition before the operation and on her subsequent improvement. *Linn Care Center v. Cannon, supra,* 74 Or App at 710.